OMOBIEN, Appellant,

v.

OHIO CIVIL RIGHTS COMMISSION et al., Appellees.

[Cite as *Omobien v. Ohio Civ. Rights Comm.* (1993), 89 Ohio App.3d 100.]

Court of Appeals of Ohio,
Summit County.

No. 16112.

Decided Aug. 25, 1993.

*Ronald G. Macala* and *Salvatore G. Falletta*, for appellant.

*Edward G. Kemp, Lee Fisher*, Attorney General, and *Wayne Kriynovich*, Assistant Attorney General, for appellees.

QUILLIN, Judge.

Plaintiff, Linda Fay Randall Omobien, appeals from the trial court's judgment affirming the Ohio Civil Rights Commission's dismissal of discriminatory promotion charges. We must determine whether the trial court abused its discretion by not finding that the employer's failure to comply strictly with posted qualification requirements conclusively proved discriminatory animus. We find no abuse of discretion and therefore affirm.

Appellant, Linda Omobien, filed a charge with the Ohio Civil Rights Commission ("OCRC") alleging that she had been discriminatorily denied a promotion with the appellee, Community Support Services, Inc. The OCRC investigated the charge and found probable cause to believe that the appellee had acted in violation of R.C. 4112.02(A).

After unsuccessful conciliation attempts, the OCRC issued a complaint alleging that the appellee had denied appellant a promotion to the position of residential services unit manager for reasons not applied equally to all persons without regard to race and sex. The OCRC appointed a hearing examiner who, upon finding a lack of discriminatory conduct, recommended that the complaint be dismissed. The hearing examiner found that the successful candidate "was the clear choice" for the promotion. The OCRC adopted the hearing examiner's report and dismissed the complaint.

Pursuant to R.C. 4112.06, appellant filed an appeal with the Summit County Court of Common Pleas. That court found that the decision was supported by reliable, probative and substantial evidence and affirmed the OCRC's dismissal order. Omobien appeals.

## Assignments of Error

"I. The Commission's conclusion that Appellant was not discriminated against on the basis of sex when she was denied the disputed position is not supported by reliable, probative and substantial evidence in the record.

"II. The Commission erroneously deferred to a finding that the Hearing Officer never made: the successful applicant, Craig, did not possess the minimum qualifications for the position.

"III. The Commission's conclusion that the Employer's selection of Craig over Appellant was legitimate and non-discriminatory is error as a matter of law.

"IV. The Employer's justification for selection of Craig over Appellant for the disputed position was simply a pretext for its discrimination, and it was error for the Commission, or the lower court, to conclude otherwise.

"V. The shifting criteria utilized by the Employer in selecting Craig for the disputed position was an improper mask for discrimination, and it was error to conclude otherwise.

"VI. The selection of Craig based upon a 'gut' reaction of the interviewing supervisory was discriminatory and it was error to conclude otherwise.

"VII. The conclusion that Appellant was without experience in budget matters is not supported by reliable, probative and substantial evidence in the record.

"VIII. The Commission erroneously ignored a pattern of selecting white male unit managers by the Employer.

"IX. The Commission erroneously concluded that the Employer's pre-selection of Craig was not discriminatory and pretextual."

■ Appellant's assignments of error are tantamount to a request to this court to review the weight of the evidence presented before the OCRC. It is well established, however, that an appellate court assumes a more limited role upon review of an administrative agency's decision.

The initial review of a final order of the Ohio Civil Rights Commission is committed by statute to the courts of common pleas. R.C. 4112.06(A). The court of common pleas reviews the findings of the OCRC by determining whether the findings are supported by "reliable, probative, and substantial evidence on the record * * *." R.C. 4112.06(E). Further review to the appropriate appellate court is permissible; however, the scope of review under which the appellate court operates is more limited than that of the trial court reviewing the same order. *Lorain City Bd. of Edn. v. State Emp. Relations Bd.* (1988), 40 Ohio St.3d 257, 261, 533 N.E.2d 264, 267.

■ While the trial court is required to examine the evidence presented before an administrative agency and determine whether such evidence is reliable, probative and substantial, an appellate court is charged solely with determining whether the trial court has abused its discretion. *Id.* Therefore, this court is limited to the narrow question of whether the Summit County Court of Common Pleas abused its discretion in affirming the Ohio Civil Rights Commission's decision.

At the administrative level, appellant's argument centered around the fact that Gerald Craig, the white male ultimately hired into the position sought by appellant, possessed only ten months of supervisory or management experience, while the job posting called for a minimum of one year of experience. Appellant further contended that she was the only qualified candidate who applied for the position.

The OCRC determined that appellee articulated a legitimate, nondiscriminatory motive for the placement of Craig in the position, and that appellant failed to show that reason to be a pretext. The trial court found that the OCRC's findings of fact were conclusive because they were supported by reliable, probative and substantial evidence. We cannot conclude that such a finding was an abuse of the trial court's discretion.

■ In cases brought under R.C. 4112.02(A), the plaintiff has the burden of proving a violation by a preponderance of reliable, probative and substantial

evidence. R.C. 4112.05(G)(1). The Ohio Supreme Court has adopted the model of proof formulated through federal case law interpreting Title VII of the Civil Rights Act of 1964 for cases involving an alleged violation of R.C. Chapter 4112. *Plumbers & Steamfitters Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 197, 20 O.O.3d 200, 203, 421 N.E.2d 128, 131–132. That model of proof requires that the plaintiff initially prove a prima facie case of discrimination by a preponderance of the evidence. *Id.* at 197, 20 O.O.3d at 203, 421 N.E.2d at 131–132, citing *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. Once the plaintiff has met this burden, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason to rebut the presumption of discrimination established by the plaintiff's prima facie case. *Id.* If the defendant successfully articulates a legitimate, nondiscriminatory reason, the plaintiff is required to prove, by a preponderance of the evidence, that "the employer's articulated reasons for the discharge are a pretext for impermissible discrimination." *Id.* at 198, 20 O.O.3d at 203, 421 N.E.2d at 132, citing *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207.

In this case, the appellee set forth Craig's prior accomplishments and experiences as residential services coordinator as a basis for finding Craig to be the more qualified candidate for the residential service unit manager position. Evidence was produced before the hearing examiner that Craig possessed superior experience in grant writing, fundraising and developing residential alternatives for clients. Additionally, Craig had functioned satisfactorily as residential services coordinator, a position entailing duties and responsibilities similar to those that would be required of the residential services unit manager. The trial court held that this rationale met the requisite production burden of the appellee in articulating a legitimate, nondiscriminatory reason.

The burden of producing a legitimate, nondiscriminatory reason is not an onerous one. "The defendant need not persuade the court that it was actually motivated by the proffered reasons. * * * It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." (Citation omitted.) *Texas Dept. of Community Affairs v. Burdine, supra,* 450 U.S. at 254, 101 S.Ct. at 1094, 67 L.Ed.2d at 216.

After the appellee met its burden of articulating a legitimate, nondiscriminatory reason, it became incumbent upon the appellant to "demonstrate that the proffered reason was not the true reason for the employment decision." *Id.* at 256, 101 S.Ct. at 1095, 67 L.Ed.2d at 217. Appellant cited appellee's failure to adhere strictly to the job qualifications as posted as evidence that appellee's

stated legitimate, nondiscriminatory reason was a pretext for discriminatory intent. The posted qualifications included:

1. A master's degree in counseling, social work or related fields;

2. Two years' experience in a mental health agency, involving at least one year in a supervisory administrative capacity; and

3. Holding a license as a mental health professional.

While appellant conceded that Craig possessed the requisite licensing and educational requirements, appellant stressed that appellee's hiring of Craig, despite the fact that he possessed only ten months of experience in a supervisory administrative capacity, was conclusive evidence of discrimination.

Two federal appellate courts have previously considered whether failure to adhere strictly to a selection criterion necessarily constitutes evidence of discriminatory intent. In *Wrenn v. Gould* (C.A. 6, 1987), 808 F.2d 493, the court considered a claim by the appellant that he was discriminated against despite being the only candidate qualified for the position. In denying appellant's appeal, the court held that an initial posting which required a master's degree was merely an employment preference and not tantamount to a "public quote contract." *Id.* at 502. Additionally, the court recognized that it was permissible for an employer to take factors into account beyond those posted—such as continuity of operations, existing working relationships with customers and employees, and budgeting experience—when selecting among job applicants. *Id.*

In *Briggs v. Anderson* (C.A. 8, 1986), 796 F.2d 1009, the court considered whether evidence of discrimination was proven conclusively by the appellee's departure from stated minimum qualification requirements in awarding a position to a white male, who possessed only two and one-half years of supervisory experience, over a black female possessing the requisite three years of experience. The court held that while an inference of discrimination might be drawn from such a situation, a successful applicant's strong qualifications in other areas sought by the employer tend to disprove an inference of discrimination. *Id.* at 1026.

Appellant also advanced the theory that appellee's hiring of Craig into the position of residential services coordinator ten months prior to filling the residential services unit manager position constituted discriminatorily motivated preselection. However, appellee produced evidence at the administrative level that the residential services unit manager position was not filled when the agency was first created due to a lack of available residential placements. It was not until after Craig was hired, and largely due to Craig's own efforts, that the residential program doubled from one hundred to two hundred beds and the need to fill the residential services unit managerial position became apparent.

Additionally, the hearing examiner noted that appellant had not expressed an interest in obtaining the residential services coordinator position when it became available and admittedly would have considered the position a demotion. Therefore, we cannot rule that the trial court abused its discretion by affirming the OCRC's decision that appellant failed to prove that the reasons given for hiring Craig were merely a pretext for discrimination.

Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*

COOK, P.J., and DICKINSON, J., concur.