JOURNAL ENTRY and OPINION
Plaintiff-appellant Kathleen Connors appeals from the trial court's granting summary judgment in favor of defendant-appellee Bridgestone Tire and Rubber Company (Bridgestone). We find no merit to the appeal and affirm.
Connors worked at Bridgestone as a senior payroll accounting clerk since 1975. Coworkers, Linda Crawford and Kim Retzlaff, also were senior accounting clerks. The women worked together in the same general area with, initially, no partitions between them.
In August 1999, Retzlaff was involved in an altercation with another coworker near Connors' work area. Doug Daniels, the manager of accounting, asked Connors her opinion of what occurred, and she informed him that Retzlaff can't seem to get along with anyone. Connors' team leader, Laura Hall, asked her what she had told Daniels, so Connors repeated the statement to her. Connors later saw Hall speaking with Crawford and believes she repeated the statement to Crawford.
According to Connors, in retaliation for her statement to Daniels, Crawford and Retzlaff began making loud sexual comments about her. They would never make eye contact with her when they made the comments, but would speak loud enough for her to overhear. The comments were sexually graphic and included details about her sexual relationships with at least two men. According to Connors, she knew that some of these comments were directed towards her because some of the comments accurately described sexual encounters and conversations she had with Crawford's former brother-in-law.
On August 23, 1999, Connors, in response to the relentless taunting, directed a memorandum to the human resources manager, Jacky Childress, in which she reported that the two women harassed her. In this memorandum, she documented the specific comments that she overheard the women making.
In response to Connors' memorandum, Childress and Daniels interviewed both Retzlaff and Crawford regarding Connors' complaint. Both women denied the allegations. Childress and Daniels found them to be credible, but advised them that if the alleged behavior did take place, it was inappropriate and should cease. They were also told that any further comments or retaliation would result in disciplinary action.
According to Connors, the women continued to make the comments. Childress conducted another meeting with the women and offered Connors the option of moving her desk away from them and working with another team. Connors turned this option down, believing this would not solve the problem. Childress periodically checked with Connors and her managers to see how she was doing. According to Childress, both the managers and Connors assured her all was well.
On February 10, 2000, Connors yelled across the room at Crawford and Retzlaff, If you have something to say to me, then say it. An investigation revealed no direct evidence that any comments were being made directly against Connors and, therefore, she was reprimanded for this outburst. The investigation did reveal that other coworkers heard Retzlaff and Crawford using profane language and thought the women were inappropriately loud. On February 22, 2000, partitions were erected around the work area. According to Childress, she received no further complaints from Connors after this.
After February 2000, Connors obtained legal counsel, so she no longer went to human resources with her complaints despite continuing to overhear remarks allegedly made about her.
On March 15, 2000, Connors filed a complaint against Bridgestone alleging she was sexually harassed by two female coworkers and that this conduct constituted infliction of emotional distress.
At the close of discovery, Bridgestone filed a motion for summary judgment and Connors filed a brief in opposition.
The trial court granted Bridgestone's motion for summary judgment in a fourteen-page opinion. The trial court found the comments made by Retzlaff and Crawford did not constitute sexual harassment because they were not based on Connors' gender. It also found that Connors failed to prove that the comments were directed at her. In addition, the trial court found that the comments did not constitute extreme or outrageous conduct so as to warrant intentional infliction of emotional distress.[1]
Connors appeals and asserts three assignments of error. We will address the assignments out of order.
 II. THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT UNDER THE [SIC] IN EFFECT FINDING THAT A CLAIM FOR SEXUAL HARASSMENT BASED UPON OFFENSIVE SPEECH OF A GRAPHICALLY SEXUAL NATURE PUBLISHED AT THE WORKPLACE WITH AN APPARENT RETALIATORY MOTIVE CANNOT CONSTITUTE SEXUAL HARASSMENT UNDER THE TOTALITY OF THE CIRCUMSTANCES.
Connors argues that the trial court erred in finding that, in order to constitute sexual harassment, the offending statements have to be made because of the plaintiff's gender.
Appellate review of summary judgments is de novo. Grafton v. Ohio Edison Co. (1996), 77 Ohio St.3d 102, 105; Zemcik v. La Pine Truck Sales Equipment (1998), 124 Ohio App.3d 581, 585. The Ohio Supreme Court stated the appropriate test in Zivich v. Mentor Soccer Club (1998),82 Ohio St.3d 367, 369-70 as follows:
 Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274.
Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. Civ.R. 56(E). Mootispaw v. Eckstein (1996), 76 Ohio St.3d 383,385. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg (1992), 65 Ohio St.3d 356, 358-59.
R.C. 4112.02(A), which sets forth unlawful employer discriminatory practices, states that it is:
 An unlawful, discriminatory practice for any employer, because of the * * * sex * * * of any person to * * * discriminate against that person with respect to hire, tenure, terms, conditions or privileges of employment, or any matter directly or indirectly related to employment.
According to the Ohio Supreme Court in Hampel v. Food Ingredients (2000), 89 Ohio St.3d 169, 176:
 [A] plaintiff may establish a violation of R.C. 4112.02(A)'s prohibition of discrimination because of * * * sex by proving either two types of sexual harassment:
 (1) quid pro quo harassment, i.e., harassment that is directly linked to the grant or denial of a tangible economic benefit, or (2) hostile environment harassment, i.e., harassment that, while not affecting economic benefits, has the purpose or effect of creating a hostile or abusive working environment.
The Supreme Court held that, in order to prove sexual harassment based on a hostile work environment, the plaintiff must show the following:
 (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment, and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action.
Id. at paragraph 2 of the syllabus.
The trial court in the instant case found that Connors failed to establish a claim for sexual harassment because the comments, although sexual in nature, were not made because of her gender, but for the purpose of retaliation for her discussing the altercation Retzlaff had with another coworker. Connors, herself, acknowledged that retaliation was the reason Crawford and Retzlaff were making the comments. (Connors Depo. at 131-132).
In Hampel, the Supreme Court held that, although same-sex harassment is possible, the comments must be sex-based in order to constitute harassment.
 Harassment because of * * * sex is the sine qua non for any sexual harassment case. * * * the term sexual as used to modify harassment, can refer both to sex as the immutable gender characteristic and to sex as describing a range of behaviors associated with libidinal gratification. 3 Larson, Employment Discrimination (2 Ed. 2000) 46-34, Section 46.03[4]. Thus actions that are simply abusive, with no sexual element, can support a claim for sexual harassment if they are directed at an employee because of his or her sex.
Id. at 178.
A review of the record in the instant case indicates that, although the comments were sexually graphic and mean-spirited, they were not sexually motivated. The comments were not made based on sexual desire, nor were they made because Connors was a female. As admitted by Connors, the women's motive in making the comments was retaliation.
Therefore, because Connors failed to establish a crucial element comprising a sexual harassment claim, the trial court did not err in granting Bridgestone's motion for summary judgment.
Connors' second assignment of error is overruled.
 I. THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT UNDER THE [SIC] IN EFFECT FINDING THAT TO SUPPORT A CLAIM FOR SEXUAL HARASSMENT, PLAINTIFF MUST PROVE OFFENSIVE SPEECH OF A GRAPHICALLY SEXUAL NATURE PUBLISHED AT THE WORKPLACE BY DEFENDANT'S EMPLOYEES [SIC] MUST REFER TO THE PLAINTIFF BY NAME OR BY OTHER IDENTIFICATION REFERENCE.
Given our disposition of the second assignment of error, this assignment of error is moot. App.R. 12(A)(1)(c).
 III. THE TRIAL COURT REVERSIBLY ERRED BY NOT GRANTING THE PLAINTIFF-APPELLANT'S MOTION FOR DEFAULT JUDGMENT.
Because Connors presents no legal authority to support her argument as required by App.R. 12(A)(2), we decline to address this assignment of error. Oakwood v. Juliano (Dec. 16, 1999), Cuyahoga App. No. 75160, unreported.
The third assignment of error is overruled.
Judgment is affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JAMES D. SWEENEY, P.J., and FRANK D. CELEBREZZE, JR., J., CONCUR
[1] Appellant stated in her brief and also during oral argument that she abandoned her cause of action for intentional infliction of emotional distress and, therefore, waives any error by the trial court in granting summary judgment on this count.